## Syas v. Peck et al.

1. **Partition Fence:** LANDS IN COMMON. Land may be said to be used in common where its use does not require an inclosure. The term " in common " is used solely with reference to the obligation to contribute to a partition fence.

2. ——: ——: HERD LAW. In a county where the herd law is in force, a party cultivating a farm and using it for raising crops cannot be required to build and maintain one-half of the partition fence, between his farm and that of an adjoining owner whose farm is inclosed; and section 1508, Code, is not inconsistent with this rule.

### *Appeal from Carroll Circuit Court.*

### SATURDAY, APRIL 22.

THE defendants are trustees of Sheridan township, Carroll county. As such they were called together as fence viewers on the request of the plaintiff, to assign, as between him on the one hand, and one Martin, and one Reed, on the other, for erection, their respective shares of a line fence. They refused to make the assignment. The plaintiff thereupon sued out a writ of *certiorari* to test the legality of their proceedings. On trial it was agreed that the herd law was in force in that county, prohibiting stock from running at large, and that the premises of Martin and Reed were under cultivation, but not fenced or inclosed, and that the owners did not desire them inclosed.

The court found that the plaintiff was entitled to an assignment of the fence as claimed by him, and that the defendants acted illegally in refusing to make the assignment. Judgment was rendered accordingly. The defendants appeal.

*Betzer & Scott*, for appellants.

*Beach & Hinman*, for appellee.

ADAMS, J.—The court certified the following question: "Is a party owning and cultivating a farm in a county where 1. PARTITION stock is prohibited from running at large whose FENCE: lands in common. farm is uninclosed, and where said party does not desire his farm inclosed, required to build and keep up one-half of the partition fence between his farm and that of an adjoining party whose farm is inclosed?"

The question presented in this case calls for a construction of section 1495 of the Code. That section provides that "no person not wishing his land inclosed and not occupying or using it otherwise than in common, shall be compelled to erect or maintain any fence between him and an adjacent owner; but when he incloses or uses his land otherwise than in common, he shall contribute to the partition fences as in this chapter provided." The question presented is as to whether Martin and Reed, under the agreed facts, were using their land otherwise than in common. The defendant trustees proceeded upon the theory that they were not; and the court must have held that they were.

Where the owner of land is using it for growing a crop, his neighbors cannot be allowed also to use it for that or any other purpose. Such use is exclusive. In one sense, then, manifestly where the owner of land is using it for growing a crop, he is using it otherwise than in common. But it appears to us that there is another sense in which he might be said to be using it in common, and that he might be said to be so using it within the meaning of the statute. Where the land in question is part of the uninclosed and general domain, whether such domain is owned in part by the United States or wholly by individuals, and the use to which the land in question is devoted does not call for an inclosure, it may be said to be used in common, and this we believe to be the meaning of the statute. The word *common* is not used with reference to any right in the land itself. It is used solely with reference to the obligation to contribute to a par-

tition fence. Now the fundamental idea of the statute seems to be, that where the owner of land is so using it that he needs a fence, he may be compelled to contribute to a partition fence, whether he desires to do so or not. A person can possibly raise a crop without a fence where stock is allowed to run at large. But the insecurity is so great, it is not, we suppose, considered justifiable except as a mere temporary expedient. Every partition fence built diminishes the labor of guarding the crop, and is a step towards effecting a complete inclosure; and the owner of the inclosed land can afford to contribute to it.

But, in counties where the herd law is in force, it is different. It is stock which creates the necessity for fences. The design of the herd law is to cast the expense of fencing upon those who by owning stock have made fences necessary. The plaintiff, Syas, we may presume is a stock owner, and desires to pasture his stock upon land adjoining that used by Martin and Reed for growing crops. If so, a partition fence is a necessity to Syas. It might be, and probably would be, of no benefit whatever to Martin and Reed. Under such circumstances, it appears to us that it would be contrary to the spirit of the statute to compel them to contribute. As we construe the statute, a farmer can form his plans according to his circumstances and the character of his farm. As the plaintiff would construe it, each farmer is subject to the changing purposes of his neighbors. A farmer, we may suppose, in a county where the herd law is in force, devotes all his means to the raising of grain, being influenced to do so by the consideration of the expense of fencing. Soon he finds himself surrounded by stock owners, and under the construction contended for would be compelled to fence. We cannot think that this is the design. If it is, then stock owners will find it for their interest to select for pastures land adjacent to cultivated lands owned by others, so as to compel others to help fence against their stock. Persons desiring to avail themselves of the ben-

fit of the herd law might find it necessary to leave a strip uncultivated and unused along their partition line in anticipation that the adjacent lands may at any time be converted into pasture and fenced accordingly.

We do not fail to observe section 1508, which is in these words: "All the provisions of this chapter in relation to partition fences shall be alike applicable to counties or townships having restrained, or which may restrain, stock from running at large." Under the construction which we adopt, the use of land for growing a crop in counties where stock is not restrained would be a use not in common, and otherwise where stock is restrained, but we do not deem our construction inconsistent with the section quoted. Words often vary in meaning somewhat according to the circumstances under which they are used.

In conclusion, we have to say, that without denying that the construction adopted by the court below may be justified by the letter of the statute, we feel constrained to hold that it must be construed somewhat with reference to the herd law reenacted into the Code; and construing it in such connection, we think the construction adopted below inconsistent with the general purpose, and cannot be sustained.

REVERSED.